BRAGG v. CENTRAL NEW ENGLAND RY. CO.

(Supreme Court, Appellate Division, Second Department.    February 13, 1914.)

MASTER AND SERVANT (§ 286*)—INJURY TO NEGLIGENT SERVANT—NEGLIGENCE
—EVIDENCE.

Evidence, in an action against a railroad for death of an employé, who, being sent out to flag trains approaching a wreck, sat down on the end of a tie and was struck by an approaching train, *held* insufficient to show the negligence which alone would render defendant liable, failure of the engineer to use reasonable care to avoid striking deceased, requiring him only on discovering his position to give a warning signal, and to do no more till the assumption that he would thereupon leave the track was made unwarrantable by some circumstance which would command the attention of a reasonably careful man.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

Appeal from Trial Term, Dutchess County.

Action by Lillian B. Bragg, administratrix of George Bragg, deceased, against the Central New England Railway Company.    From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals.    Reversed and directed.

See, also, 152 App. Div. 444, 137 N. Y. Supp. 273.

Argued before JENKS, P. J., and BURR, CARR, RICH, and STAPLETON, JJ.

S. H. Brown, of Poughkeepsie, for appellant.
Raymond E. Aldrich, of Poughkeepsie, for respondent.

STAPLETON, J.    On the 1st day of October, 1909, during the afternoon, a collision, resulting in a wreck, occurred on the defendant's one-track railroad within a short distance of Lloyd, in Ulster county, N. Y.    The plaintiff's intestate was employed on the road as a section hand.    He was at work that day and was obliged, with his fellows, to continue at work throughout the night because of the necessity of clearing the line of the wreckage.    On the morning of October 2d, around 7 o'clock, by the direction of his foreman, he went up the road, some distance from the wreck and in the vicinity of a highway crossing, to act as flagman.    His duties were to watch the track and warn approaching trains.    At about a quarter to 11 in the forenoon he was seen walking along the track accompanied by two children of the neighborhood.    He had a red flag in his hand.    Called away by their mother, the children left him, and shortly thereafter he sat down in a crouching position, his head in his hands, at the south side of the track, on the end of one of the ties which supported the rails.    The tie upon which he sat was between 132 and 263 feet west of the center line of the highway crossing.    West of the crossing, distant 1,325 feet, there was a "whistling post" where trains running east sounded their whistles to give warning of their approach.    West of the crossing the track was straight for some 4,200 feet and there was nothing to obstruct the view.    The track was practically level.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Approaching from the west, on its way to the scene of the wreck, came the train which struck the plaintiff's intestate and inflicted the injuries which within an hour resulted in his death. It was a wrecking train belonging to the New York, New Haven & Hartford Railroad Company. It had come to the wreck during the night and was then returning from Modena, where it had gone for a supply of water. One Shove, an engineer employed by the defendant, was in charge. The regular engineer, Brennan, was on the train but performed none of the duties in connection with its operation. The engine was running backward with the tender ahead. Following the engine were three cars. Shove, the operating engineer, sat on the right-hand or northerly side of the engine, and Brennan sat on the left-hand or southerly side. The fireman, when not engaged in firing, was also on the southerly side. When he reached the whistling post, Shove blew the whistle and rang the automatic bell. After passing the post he espied Bragg sitting on the track. As to what happened then and thereafter, the testimony varied somewhat.

For the defendant, evidence was offered to show that the engineer did not see Bragg until very close to him, and that immediately upon seeing Bragg he blew a warning whistle—consisting of several shrill, sharp whistles—applied the emergency brakes, and sanded the track. He himself testified that nothing more could have been done to stop the train, that it responded at once to the brakes, and that it came to a stop within 240 or 250 feet after they were applied. For the defendant there was also testimony that the train was traveling at a speed of 25 miles an hour, and that such a train, running at that rate, could not be stopped within less than 450 or 500 feet. On the other hand, the plaintiff offered testimony to prove that at the moment the warning whistle sounded the train was 501 feet west of the tie upon which Bragg sat; that from the blowing of the whistle until Bragg was struck the speed did not lessen; that the speed was about 12 miles an hour or a little faster; and that such a train could be stopped within 125 feet if running 12 miles an hour, and within 160 feet if running at a speed of 25 miles an hour. The train ran beyond the highway crossing before it stopped.

The defendant had the right to run its train at any speed, fast or slow, as it saw fit. It owed to the decedent no duty of active vigilance to discover his presence upon the track. Unless his presence was discovered and a condition of unconsciousness or helplessness was obvious to the engineer, situated as the engineer was, the engineer had the right to assume that decedent would respond to a signal warning him sharply of the approach of the train. It was only after the warning had been demonstrated to be ineffectual, that notwithstanding it a human body remained inert, that the law laid an active duty upon the defendant. Its duty from that point on was to use reasonable care to avoid striking the body. The failure to perform that duty would be such reckless conduct on the part of the engineer as would constitute actionable negligence for which his master would be liable to the representative of a deceased employé. We cite the following decisions as authorities sustaining our statement of the law: O'Brien v. Erie R. R.

Co., 210 N. Y. 96, 103 N. E. 895; Chrystal v. Troy & Boston R. Co., 105 N. Y. 164, 11 N. E. 380; Kenyon v. N. Y. Cent. & H. R. R. R. Co., 5 Hun, 479, affirmed 76 N. Y. 607; Rosenthal v. N. Y., Susquehanna & W. R. R. Co., No. 1, 112 App. Div. 431, 98 N. Y. Supp. 476; Bragg v. Central New England Railway Co., 152 App. Div. 444, 137 N. Y. Supp. 273; Burgess v. Long Island Railroad Co., 153 App. Div. 379, 138 N. Y. Supp. 560. See, also, section 42a, c. 565, Laws of 1890, as added by chapter 657, Laws of 1906; Hallock v. New York, O. & W. R. Co., 197 N. Y. 450, 90 N. E. 1124; Breed v. Lehigh Valley Railroad Co., 131 App. Div. 492, 493, 115 N. Y. Supp. 1019; Connell v. New York Central & H. R. R. R. Co., 144 App. Div. 664, 669, 129 N. Y. Supp. 666.

The plaintiff would uphold her verdict by pointing to evidence that a sharp whistle was heard; that at that time the train was such a distance from the body of Bragg that, had the engineer then begun to use the means available to stop the train, the train, in the opinion of persons skilled in the operation of locomotives, could have been brought to a standstill before it reached Bragg. There was some evidence that the engineer did not slow down until after Bragg was struck. There was no evidence as to the position of the train in relation to Bragg when it became apparent that Bragg did not hear or heed the warning whistle. The plaintiff's only witness that gave evidence of essential facts testified that he was expecting Bragg would jump up every minute and that nothing impressed him with the idea that Bragg was asleep.

This evidence falls short of its purpose. The jury could not assume that the engineer willfully and recklessly ran upon Bragg after discovering Bragg's inertia. Such a conclusion must not rest upon conjecture; it must be supported by evidence. The engineer had the right to assume that a body apparently human, when in peril from an approaching train in broad daylight, would, in obedience to a warning whistle, leave the track in time to escape injury. No negligence could be imputed until that assumption was made unwarrantable by some circumstance which would command the attention of a reasonably careful man.

There was no evidence of lack of reasonable care in the management of the train, and the complaint should have been dismissed.

The judgment and order should be reversed, and judgment directed dismissing plaintiff's complaint, with costs. All concur.